Case No. 24-CV-04828 (JGLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.H. and V.B., individually and on behalf of N.B., a child with disability,

*Plaintiffs*,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant.*

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
Attorney for Defendant the New York City Department of Education
100 Church Street
New York, New York 10007
Of Counsel:  Saarah S. Dhinsa
Tel: (212) 356-0872

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 1

STATUTORY SCHEME AND STANDARD OF REVIEW ........................................ 3

    A.  Purposes and Procedures of the IDEA ................................................. 3

    B.  The *Burlington/Carter* Reimbursement Test
        under the FAPE Framework ............................................................ 5

ARGUMENT .......................................................................................... 6

    POINT I ...................................................................................... 6

        THE IHO AND SRO CORRECTLY
        DETERMINED THAT THE DOE OFFERED THE
        STUDENT A FAPE ....................................................................... 6

        A.  The IHO and the SRO Correctly Found that the
            DOE Did Not Engage in Predetermination ......................................... 7

        B.  The IHO and SRO Correctly Found that the
            DOE Did Not Deny the Student a FAPE by Not
            Conducting an FBA and Developing a BIP ......................................... 9

        C.  The IHO and SRO Correctly Found that the
            CSE's Failure to Recommend 1:1 ABA Services
            Did Not Constitute a Denial of FAPE. ............................................ 12

    POINT II ..................................................................................... 14

        BECAUSE THE DOE OFFERED THE STUDENT
        A FAPE, THIS COURT NEED NOT CONSIDER
        PRONGS TWO OR THREE OF THE
        *BURLINGTON/CARTER* ANALYSIS .................................................... 14

    POINT III ..................................................................................... 14

        PLAINTIFFS' SECTION 504 CLAIM SHOULD
        BE DISMISSED AS DEFENDANT HAVE NOT

**Page**

      ACTED WITH BAD FAITH OR GROSS
      MISJUDGMENT ........................................................................... 14

CONCLUSION ............................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Pages**

*A.M. v. New York City Dep't of Educ.,*
   845 F.3d 523 (2d Cir. 2017)............................................................................................12

*A.S. v. New York City Dep't of Educ.,*
   573 Fed. App'x 63 (2d Cir. July 29, 2014)............................................................................12

*B.K. v. New York City Dep't of Educ.,*
   12 F. Supp. 3d 343 (E.D.N.Y. 2014) ......................................................................................8

*T.J. ex rel. B.W. v. Bd. of Educ.,*
   2019 U.S. Dist. LEXIS 171583 (S.D.N.Y. Sept. 30, 2019)..............................................15, 16

*Bd. of Educ. v. Rowley,*
   458 U.S. 176 (1982)..............................................................................................3, 5, 6, 12

*C.L. v. Scarsdale Union Free School Dist.,*
   744 F.3d 826 (2d Cir. 2014)...................................................................................................16

*C.M. v. N.Y. City Dep't of Educ.,*
   2017 U.S. Dist. LEXIS 20790 (S.D.N.Y. 2017)......................................................................11

*Cerra v. Pawling Cent. Sch. Dist.,*
   427 F.3d 186 (2d Cir. 2005)....................................................................................................6

*D.S. v. Rockville Ctr. Union Free Sch. Dist.,*
   2022 WL 683973 (E.D.N.Y. Mar. 8, 2022) .....................................................................13, 14

*D.S. v. Trumbull Bd. of Educ.,*
   975 F.3d 152 (2d. Cir. Sept. 17, 2020) ...............................................................................9-10

*DiRocco v. Bd. of Educ. of Beacon City Sch. Dist.,*
   2013 WL 25959 (S.D.N.Y. Jan 2, 2013) ................................................................................8

*E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.,*
   361 Fed. App'x 156 (2d Cir. Oct. 16, 2009)............................................................................9

*F.L. v. New York City Dep't of Educ.,*
   553 Fed. App'x 2 (2d Cir. Jan. 8, 2014) ...............................................................................10

*Florence Cnty. Sch. Dist. Four v. Carter,*
   510 U.S. 7 (1993)....................................................................................................................5

*Forest Grove Sch. Dist. v. T.A.,*
   557 U.S. 230 (2009)................................................................................................................3

**Cases**                                                                           **Pages**

*French v. New York State Dep't of Educ.*,
   476 F. App'x 468 (2d Cir. 2011) ............................................................................16

*Gagliardo v. Arlington Cent. Sch. Dist.*,
   489 F.3d 105 (2d Cir. 2007)............................................................................3, 4

*K.L. v. New York City Dep't of Educ.*,
   530 Fed. App'x 81 (2d Cir. July 24, 2013) ...............................................................12

*M.H. v. N.Y.C. Dep't of Educ.*,
   685 F.3d 217 (2d Cir. 2012)............................................................4, 5, 6, 7, 12

*M.M. v. New York City Dep't of Educ.*
   Region 9 (Dist. 2), 583 F. Supp. 2d 498, 506 (S.D.N.Y. 2008)................................................8

*M.W. v. N.Y.C. Dep't of Educ.*,
   725 F.3d 131 (2d Cir. 2013)............................................................................5, 10

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
   397 F.3d 77 (2d Cir. 2005)............................................................................5

*Mrs. B v. Milford Bd. of Educ.*,
   103 F.3d 1114 (2d Cir. 1997)............................................................................5

*M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*,
   226 F.3d 60 (2d Cir. 2000)............................................................................14

*Otto v. New York City Dep't of Educ.*,
   2022 U.S. Dist. LEXIS 74030 (S.D.N.Y. Apr. 22, 2022)......................................................15

*P.L. v. N.Y.C. Dep't of Educ.*,
   56 F. Supp. 3d 147 (E.D.N.Y.) ............................................................................11

*R.B. v. New York City Dep't of Educ.*,
   589 Fed. App'x 572 (2d Cir. Oct. 29, 2014)................................................................12, 13

*R.E. v. N.Y.C. Dep't of Educ.*,
   694 F.3d 167 (2d Cir. 2012)............................................................3, 5, 6, 10, 11, 12, 13

*C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*,
   746 F.3d 68 (2d Cir. 2014)............................................................................4, 5, 10

*Rutherford v. Fla. Union Free Sch. Dist.*,
   2019 U.S. Dist. LEXIS 55971 (S.D.N.Y. Mar. 29, 2019) ....................................................15

**Cases**                                                                          **Pages**

*S.B. N.Y.C. Dep't of Educ.*,
   117 F. Supp. 3d 355 (S.D.N.Y. 2015)................................................................16

*T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*,
   554 F.3d 247 (2d. Cir. 2009)......................................................................7

*Scaggs v. New York State Dep't of Educ.*,
   2007 U.S. Dist. LEXIS 35860 (E.D.N.Y. May 16, 2007) (Bianco, J.)...................................15

*Sch. Comm. of Burlington v. Dep't of Educ.*,
   471 U.S. 359 (1985)......................................................................5

*T.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014)................................................................5, 6

*W.A. v. Hendrick Hudson Cent. Sch. Dist.*,
   927 F.3d 126 (2d Cir. 2019)..................................................................4

*Z.C. v. N.Y.C. Dep't of Educ.*,
   222 F.Supp.3d 326 (S.D.N.Y. 2011)............................................................4

**Statutes**

34 CFR 300.24(a)(2)(i) ...............................................................................9

34 CFR 300.39(a)(3) ..............................................................................12, 13

8 NYCRR 200.4(d)(3)(i) ...............................................................................9

8 NYCRR 200.22(a)-(b) ...............................................................................9

20 U.S.C. §1400 et seq...............................................................................1

20 U.S.C. §1400(d)(1)(A) .............................................................................3

20 U.S.C. §1401 .....................................................................................3

20 U.S.C. §1412(a)(10)(C) ............................................................................5

20 U.S.C. §1412(a)(10)(C)(i) ..........................................................................5

20 U.S.C. § 1414(b)(2)(A) ............................................................................9

20 U.S.C. § 1414(b)(3)(A) ............................................................................9

20 U.S.C. § 1414(d)(3)(B)(i) ..........................................................................9

**Statutes**                                                                              **Pages**

20 U.S.C. §§1415(i)(1)(B), (2)(A).................................................................4

20 U.S.C. § 1415(i)(2)(C)(i)-(iii) (2018) ...................................................4

20 U.S.C. §1415(b)(6)(A)...........................................................................3

20 U.S.C. §1415(f)(1)(A).........................................................................3-4

20 U.S.C. §1415(g)(1) .................................................................................4

29 U.S.C § 794(a) .....................................................................................15

N.Y. Educ. Law §4402(1)(b)(1) ..................................................................3

N.Y. Educ. Law § 4402(2) ..........................................................................4

N.Y. Educ. Law §4404(1)(a) .......................................................................4

N.Y. Educ. Law §4404(2) ............................................................................4

N.Y. Educ. Law §4404(3)(a) .......................................................................4

NYCRR §§ 200.1(mmm)..............................................................................9

Rehabilitation Act § 504 .......................................................................15, 16

## PRELIMINARY STATEMENT

This Court should affirm the well-reasoned and thorough administrative decisions of the Impartial Hearing Officer ("IHO") and State Review Officer ("SRO"), which correctly found on the merits that the Department of Education ("DOE") offered N.B. ("the Student"), a Free Appropriate Public Education ("FAPE"), and as such, appropriately denied Plaintiffs' request for public funding of tuition for the 2023-2024 school year (hereinafter "SY") at Tribeca Preparatory School ("Tribeca Prep"), a private school placement of Plaintiffs' unilateral choosing. For the reasons set forth more fully below, this Court should grant Defendant DOE's cross-motion for summary judgment and deny Plaintiffs' motion by affirming IHO Michelle S. Babbitt's and SRO Carol H. Hauge's decision finding that the DOE did offer the Student a FAPE.

After independently reviewing the underlying record and weighing all relevant evidence, the IHO issued a lengthy, well-reasoned, and thorough decision. Upon Plaintiffs' appeal, the SRO conducted a separate comprehensive review and rendered a thorough decision as well. In Appeal No. 24-048 dated April 1, 2024, the SRO affirmed the IHO's finding, that the DOE did provide a FAPE to the Student. Plaintiffs' conclusory arguments to the contrary do not warrant departure from the well-settled principle that the IHO and SRO decisions deserve deference from the Courts. Instead, the preponderance of the evidence, as robustly examined and weighed by both the IHO and SRO, demonstrates that this administrative decision was correct – DOE offered a FAPE to the Student. Thus, the Court should deny Plaintiffs' motion, grant Defendant's cross-motion, and enter judgment for the Defendant.

## STATEMENT OF FACTS

Plaintiffs A.H. and V.B ("Parents"), on behalf of their minor child, N.B. (the "Student"), a student with a disability, bring this action pursuant to the IDEA, 20 U.S.C. §§1400 et seq. Plaintiffs

appeal the SRO decision, which found that for the 2023-24 SY, the DOE did provide a FAPE to the Student. (*see* Certified Record (hereinafter "R") R-SD-17).

At the start of the 2023-24 SY, the Student was 5 years old. (R-SD-2). The Student has a diagnoses of: Autism Spectrum Disorder ("ASD"), with accompanying intellectual impairment and language impairment, Attention Deficit Hyperactivity Disorder ("ADHD") combined presentation; and Developmental Coordination Disorder. (R-SD-2). The Student started attending Tribeca Preparatory School ("Tribeca Prep") during the 2023-24 SY. (R-SD-3). For the Student's prior 2022-23 SY, the Student attended a district public school, No. 8 ("P.S. 8"), with 12:1+1 special class and received related and paraprofessional services. (R-SD-2, 3).

The CSE convened on May 23, 2023 and developed an IEP for the Student. (R-SD-3). The CSE reconvened on June 27, 2023 to consider a March 2023 neuropsychological evaluation report, which had not been made available to the CSE earlier. *Id.* For the 2023-24 SY, the June 2023 CSE recommended a 12:1+1 special class placement in a district specialized school with speech-language therapy, OT, physical therapy (PT), and counseling, as well as individual paraprofessional services, all to be implemented beginning September 2023. *Id.*

In an undated prior written notice, the DOE provided the Plaintiffs with the June 2023 CSE recommendations and notice of the public-school assignment. *Id.* On July 21, 2023, the Plaintiffs entered into a contract with Tribeca Prep to enroll the student for the 2023-24 SY. *Id.* On September 7, 2023, Plaintiffs filed their due process complaint, asserting the DOE denied the student a FAPE for the 23-24 SY, and seeking public funding of tuition. *Id.*

On October 31, 2023, the IHO began conducting the impartial hearing on the merits of the Plaintiffs' claims for the 23-24 SY, concluding the hearing on the merits on November 8, 2023, after two days of proceedings, in addition to an earlier pre-hearing conference. (R-SD-3-4). In IHO

decision No. 257737 dated January 10, 2024, the IHO found that the DOE did offer a FAPE and denied Plaintiffs' request for tuition reimbursement. (R-I-20). Plaintiffs appealed the IHO decision. (R-SD-3). In Appeal No. 24-048, dated April 1, 2024, the SRO agreed with the IHO and dismissed the Plaintiffs' appeal. (R-SD-6-17). Having determined that the DOE offered the Student a FAPE for the 2023-24 SY, both the IHO and SRO found that there was no need to reach the issues of whether the Student's unilateral placement was appropriate or whether equitable considerations support the Plaintiffs' claim. *Id.*

## STATUTORY SCHEME AND STANDARD OF REVIEW

### A.    Purposes and Procedures of the IDEA

Congress enacted the IDEA to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). The IDEA provides that a child with a disability must receive a FAPE, which includes special education and related services provided at public expense. 20 U.S.C. § 1400(d)(1)(A). These services must meet the standards of the State educational agency and be provided in conformity with an IEP for each such student. 20 U.S.C. § 1401; *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). In New York, the State has assigned responsibility for developing IEPs to local CSEs, comprised of members appointed by the local school district's board of education. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing N.Y. Educ. Law § 4402(1)(b)(1)). The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program. *R.E.*, 694 F.3d at 175 (citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007)).

The IDEA sets forth procedures for a parent to present a complaint regarding the educational placement of a student, including a complaint regarding the student's IEP. *See* 20 U.S.C. § 1415(b)(6)(A). Parents must file a due process complaint (hereinafter "DPC") outlining their grounds for challenging the IEP before they are entitled to a hearing before an IHO. *See* 20

U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). In New York State, the IHO's decision may be appealed by either party to the State Education Department's Office of State Review, where the SRO will independently review the findings and decision rendered by the IHO. 20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(2). The SRO is empowered to modify "any determination of the impartial hearing officer" relating to the selection of an appropriate special education program or service. N.Y. Educ. Law § 4404(2). Although the SRO's decision is considered final, a party aggrieved by that decision may bring an action for relief in state or federal district court. 20 U.S.C. §§ 1415(i)(1)(B), (2)(A); N.Y. Educ. Law § 4404(3)(a).

Typically, federal courts evaluating claims under the IDEA "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Gagliardo*, 489 F.3d at 112; *see also* 20 U.S.C. § 1415(i)(2)(C)(i)-(iii) (2018). In New York, this record typically comes from an SRO, the final state administrative arbiter of questions relating to the IDEA, who reviews the decisions and orders of an IHO. N.Y. Educ. Law § 4402(2). A court's review, however, must give deference to the factual findings in the underlying state administrative proceedings, where questions of educational methodology and policy are considered with greater expertise. *See Z.C. v. N.Y.C. Dep't of Educ.*, 222 F.Supp.3d 326, 332-33 (S.D.N.Y. 2011); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). A reviewing court must also take care not to "'credit the conclusions that [are] most consistent with its own subjective analysis,' [and] should only reject the SRO's conclusions if it finds that they are not supported by a preponderance of the evidence." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 149 (2d Cir. 2019) (quoting *M.H.*, 685 F.3d at 248).

Importantly though, the degree of deference afforded to the SRO's opinion depends upon "the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. N.Y.C.*

*Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (citing *M.H.*, 685 F.3d at 244). A reviewing court's "institutional competence" depends upon whether the questions presented are "'persistent and difficult questions of educational policy,'" *C.F.*, 746 F.3d at 77 (quoting *Rowley*, 458 U.S. at 208), or by contrast "'issues of law,' such as the 'proper interpretation of the federal statute and its requirements.'" *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (quoting *Mrs. B v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997)). A determination on the former deserves greater deference than does a determination regarding the latter. *See R.E.*, 694 F.3d at 189.

## B.    The *Burlington/Carter* Reimbursement Test under the FAPE Framework

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may unilaterally place their child in a private school and then seek retroactive tuition reimbursement from the local school district. 20 U.S.C. § 1412(a)(10)(C). Parents who choose this path, however, "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985)); *see generally* 20 U.S.C. § 1412(a)(10)(C)(i). A school district is required to pay for the program selected by a parent only if: (1)  the educational program recommended by the school district was inadequate or inappropriate, (2)  the program selected by the parent was appropriate, such that the private program meets the student's special education needs, and (3)  the equities support the parent's claim. These three "prongs," comprise the *Burlington/Carter* test. *See T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (citing *M.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013)); *Carter*, 510 U.S. 7, 15-16.

**ARGUMENT**

**POINT I**

**THE IHO AND SRO CORRECTLY DETERMINED THAT THE DOE OFFERED THE STUDENT A FAPE**

In Appeal No. 24-048 dated April 1, 2024, the SRO properly found that the record demonstrates that the DOE offered the Student a FAPE. (R-SD-6-17). A school district offers a student an appropriate placement (Prong I of the *Burlington/Carter* test), when, *inter alia*, it: (1) adheres to the procedural requirements set forth in the IDEA for developing an IEP, and (2) develops an IEP that is substantively adequate for the student. *Rowley*, 458 U.S. at 206-07; *T.M.*, 752 F.3d at 151, 160–61; *R.E.*, 694 F.3d at 189–90; *M.H.*, 685 F.3d at 245; *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).

This Court should defer to the IHO and SRO's well-reasoned findings that the DOE offered the Student a FAPE for the school year in question. (R-SD-6-17, I-3-20). Both the IHO and SRO thoroughly analyzed the issues before them to render sound decisions. Their detailed discussions of the facts of this case, and of the law as applied to those facts, fully warrant deference and are legally correct. On the other hand, Plaintiffs' arguments to the contrary are baseless and conclusory. In their motion papers, Plaintiffs argue in a conclusory manner that the Student was denied a FAPE on the purported grounds that: (1) the IEP was allegedly procedurally defective because (a) the CSE engaged in impermissible predetermination in deciding not to recommend Applied Behavior Analysis ("ABA") services; and (b) the CSE failed to conduct a Functional Behavior Assessment ("FBA") and develop a Behavior Intervention Plan ("BIP"); and (2) the IEP did not include ABA services. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment dated December 13, 2024 ("Pl. Mem.") at 16-30). For the reasons set forth more fully below, Plaintiffs' arguments have no basis in law or fact and are unavailing. Plaintiffs'

moving papers also utterly fail to address and, therefore, Plaintiffs concede and have waived any challenge with respect to the determination by the IHO and SRO that the June 2023 CSE's 12:1+1 placement recommendation did not deny the Student a FAPE.

## A.    The IHO and the SRO Correctly Found that the DOE Did Not Engage in Predetermination.

Plaintiffs' moving papers allege that neither the IHO nor SRO determined whether "the DOE's decision to not include ABA in N.B.'s IEP amounted to impermissible predetermination." Pl. Mem. at 25. However, Plaintiffs contradict themselves in the very next sentence: "[] [T]he SRO's predetermination discussion focused on whether the CSE considered recommending a nonpublic school that could offer ABA—not whether the CSE meaningfully considered recommending ABA in N.B.'s IEP, the issue Parents pled in their DPC." *Id.* By acknowledging that the SRO addressed the issue of predetermination, Plaintiffs undermine their own argument. Their assertion that the SRO's "failure to decide the precise predetermination issue at hand merits no deference" is therefore illogical. *Id.* The SRO thoroughly analyzed the issue and correctly found that the DOE did not engage impermissible predetermination. (R-6-7).

A predetermination claim amounts to a challenge to the parent's opportunity to participate in the CSE meeting. *See T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253 (2d. Cir. 2009) (rejecting predetermination claim where the record reflected meaningful participation by the parents and the parents "failed to show that [the district] did not have an open mind as to the content of [the student's] IEP"); *M.H.*, 685 F.3d at 256-57 (no predetermination where the evidence did not "tend to establish that the district would not consider a[n] [alternative] placement in an appropriate case"). Predetermination is not present if the district has "an open mind as to the contents of [the student's] IEP. *T.P.*, 554 at 253. Districts may "prepare reports and come with pre[-]formed opinions regarding the best course of action for the child as long as they

are willing to listen to the parents and parents have the opportunity to make objections and suggestions." *DiRocco v. Bd. of Educ. of Beacon City Sch. Dist.*, 2013 WL 25959, at *18 (S.D.N.Y. Jan 2, 2013), quoting *M.M. v. New York City Dep't of Educ. Region 9 (Dist. 2)*, 583 F. Supp. 2d 498, 506 (S.D.N.Y. 2008); see *B.K. v. New York City Dep't of Educ.*, 12 F. Supp. 3d 343, 358-59 (E.D.N.Y. 2014) (holding that "active and meaningful" parent participation undermines a claim of predetermination).

The record shows that the June 2023 CSE considered ABA services for the Student. (R-SD-10-14). The June 2023 IEP shows that the June 2023 CSE was aware the Student was receiving ABA services at the time the IEP was developed. (R-SD-7). Furthermore, the DOE considered the private neuropsychologist's recommendation for a nonpublic 1:1 ABA program, but was concerned about the Student's LRE, and "that such a placement was 'counterproductive' to building the [S]tudent's 'socialization skills' because it would 'reduc[e] the amount of time spent with peers". *Id.* The DOE considered the private neuropsychologist's placement recommendation, as well as, considered other special class placements and nonpublic day school placement, but determined that the Student needed a less restrictive environment to "benefit from full-time access to socialization with peers." *Id.*

Therefore, contrary to Plaintiffs' assertion that "neither the SRO nor the IHO decided whether the DOE's decision to not include ABA in N.B.'s IEP amounted to impermissible predetermination", it is clear that both the IHO and SRO thoroughly analyzed whether the DOE engaged in predetermination and found that it did not. Pl. Mem. at 31. In fact, the IHO believed that "if there was a pre-determination here, it appears that it was Parents who had made up their minds as to where the Student should be placed prior to coming to the [] IEP meeting." (R-I-19). The SRO also correctly found that "the June 2023 CSE did not engage in predetermination by

8

recommending a program and placement different from the one desired by the [Plaintiffs], rather, it maintained the requisite open mind and considered the [Plaintiffs'] preference for an ABA-based program but determined that a less restrictive program was appropriate to meet the [S]tudent's needs." (R-SD-7). Accordingly, the Court should uphold both the IHO and SRO's determination that the DOE did not engage in predetermination.

**B.    The IHO and SRO Correctly Found that the DOE Did Not Deny the Student a FAPE by Not Conducting an FBA and Developing a BIP.**

Plaintiffs allege that the CSE's failure to conduct an FBA and develop a BIP constitutes a substantive procedural violation. Pl. Mem. at 27-30.

Under the IDEA, a CSE may be required to consider special factors, such as behavior that impedes a student's learning or that of others, in the development of an IEP. In developing an IEP for "a child whose behavior impedes the child's leaning," the school district must "consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i); 34 CFR 300.24(a)(2)(i); *see* 8 NYCRR 200.4(d)(3)(i); *see also E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.*, 361 Fed. App'x 156, 160 (2d Cir. Oct. 16, 2009); *A.C.*, 553 F.3d at 172.

For students who engage in impeding behaviors, CSEs shall consider the development of a "behavioral intervention plan," based on a functional behavioral assessment ("FBA"). 8 NYCRR 200.4(d)(3)(i), 200.22(a)-(b)). An FBA is considered an "assessment tool" that "seeks to understand [] how the child's behavior impacts their ability to learn," and identifies intervention strategies. *See* 20 U.S.C. §§ 1414(b)(2)(A), (b)(3)(A); NYCRR §§ 200.1(mmm), 200.22(b); *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152 (2d. Cir. Sept. 17, 2020). However, "[f]ailure to conduct [a functional behavior assessment], [] does not render an IEP legally inadequate under the IDEA as long as the IEP adequately identifies a student's behavioral impediments and implements

strategies to address that behavior." *M.W.*, 725 F.3d at 140; *see also R.E.*, 694 F.3d at 190 ("[T]he failure to conduct an FBA will not always rise to the level of a denial of a FAPE."). This is true for a CSE's failure to produce a BIP as well. As long as the IEP addresses the impeding behaviors, the failure does not rise to the level of a FAPE. *See C.F.*, 746 F.3d at 80; *F.L. v. New York City Dep't of Educ.*, 553 Fed. App'x 2, 6-7 (2d Cir. Jan. 8, 2014); *M.W.*, 725 F.3d at 140; *R.E.*, 694 F.3d at 190).

The only evidence suggesting that the Student exhibited interfering behaviors comes from the evaluation conducted by Plaintiffs' doctor, with no additional supporting evidence. (R-SD-9, T-84-T-88). In fact, the testimony indicates that Plaintiffs' counsel repeatedly interrupted Mr. Popel in an effort to elicit a response favorable to their argument. *Id.* The IHO considered all the evidence, including Plaintiffs' doctor's evaluation, and determined that the DOE did not deny the Student a FAPE. (R-I-3-I-20). Furthermore, the SRO correctly concluded that even if the DOE's failure to conduct an FBA or develop a BIP constituted a procedural violation, the IEP adequately addressed the Student's behaviors and, therefore, did not amount to a denial of a FAPE. (R-SD-8-SD-10).

The IEP did, in fact, address the Student's impeding behaviors without an FBA or BIP. *Id.* The CSE recommended 1:1 health paraprofessional services to address the [S]tudent's "ASD sensory" needs, and to assist the [S]tudent with transitioning between activities, providing redirection with visual and verbal cues, requesting things, following routines and schedules, participating in group activities, completing daily activities, and assisting the [S]tudent in the cafeteria with opening his lunch and using utensils." (R-SD-9-SD-10). The CSE also recommended the use of certain supports and strategies to address the Student's management needs. Some of the supports identified included the use of "visual and verbal directions, graphic

organizers, step by step instructions, visual aids, directions broken down…" *Id.* Additionally, the IEP addressed the Student's language deficits that led to their overall difficulty with coping skills. To address this, the "CSE developed a number of speech-language annual goals that addressed the [S]tudent's pragmatic language, expressive language, and receptive language skills, and recommended speech-language therapy services." *Id.* Even if it is found that the Student had "interfering behaviors," it is not always enough to amount to a denial of a FAPE. *See C.M. v. N.Y. City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 20790 (S.D.N.Y. 2017); *P.L. v. N.Y.C. Dep't of Educ.*, 56 F. Supp. 3d 147, 163 (E.D.N.Y.) ("In sum, the three procedural flaws with the IEP found by the Court, *i.e.*, the absence of a vocational assessment, the failure to conduct an FBA, and the lack of provisions for parent counseling, neither separately nor cumulatively rise to the denial of a FAPE."); *R.E.*, 694 F.3d at 193 (concluding that IEP's failure to provide for parent counseling and deficiencies in FBA did not cumulatively amount a violation of the IDEA). The lack of a FIB is considered a serious procedural violation only if a student's impeding behaviors are significant. *C.M.*, 2017 U.S. Dist. LEXIS 20790, at 45-46.

Plaintiffs' moving papers wholly misrepresent the facts as it represents that the Student has "significant" interfering behaviors. As discussed above, the only evidence suggesting that the Student exhibited interfering behaviors comes from the evaluation conducted by Plaintiffs' doctor, with no additional supporting evidence. To now say that the Student represents with "significant" interfering behaviors is misleading.

**C.    The IHO and SRO Correctly Found that the CSE's Failure to Recommend 1:1 ABA Services Did Not Constitute a Denial of FAPE.**

Plaintiffs argue two things: 1) that the IHO failed to apply the Second Circuit "clear consensus" doctrine when analyzing whether the lack of ABA services constitutes a denial of a FAPE; and 2) that the lack of ABA services constitutes a denial of a FAPE. Pl. Mem at 22-30.

Generally, an IEP does not need to specify the exact methodologies a student's teacher must use. *R.B. v. New York City Dep't of Educ.*, 589 Fed. App'x 572, 575-76 (2d Cir. Oct. 29, 2014); *A.S. v. New York City Dep't of Educ.*, 573 Fed. App'x 63, 66 (2d Cir. July 29, 2014); *K.L. v. New York City Dep't of Educ.*, 530 Fed. App'x 81, 86 (2d Cir. July 24, 2013). As long as any methodology in the IEP is "appropriate to the [student's] needs," the omission of a particular methodology is not a procedural violation. *R.B.*, 589 Fed. App'x at 576 (upholding an IEP when there was no evidence that the student "could not make progress with another methodology"), citing 34 CFR 300.39(a)(3) and *R.E.*, 693 F.3d at 192-94.

However, according to the Second Circuit, a specific methodology must be included in the IEP if the evaluative materials before the CSE recommend it, there are no contrary evaluations, and the school district has not conducted any assessments that challenge the recommendations in those materials. *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 544-45 (2d Cir. 2017). In such cases, a "clear consensus" exists, requiring the methodology to be included, even if a school district CSE member testifies in favor of a more flexible approach that leaves methodological decisions to the teacher implementing the IEP. *Rowley*, 458 U.S. at 204; *R.B.*, 589 Fed. App'x at 576; *A.S.*, 573 Fed. App'x at 66; *K.L*, 530 Fed. App'x at 86; *R.E.*, 694 F.3d at 192-94; *M.H.*, 685 F.3d at 247. While an IEP may omit a specific methodology as long as the approaches referenced are appropriate for the Student's needs, when a clear consensus supports the necessity of a particular methodology for the Student to benefit educationally, the IEP must reflect that

requirement. *R.B.*, 589 Fed. App'x at 576 (upholding an IEP when there was no evidence that the student "could not make progress with another methodology"), citing 34 CFR 300.39(a)(3) and *R.E.*, 694 F.3d at 192-94).

Plaintiffs claim that there was a "clear consensus" that ABA services must be included in the Student's IEP, because the private neuropsychological evaluation report was the "only evaluative material available" to the June 2023 CSE. Pl. Mem. at 25. However, this assertion is incorrect. Following a thorough review of the evidence, the SRO found that the June 2023 district representative mistakenly stated that the neuropsychological evaluation was the sole basis for the decision. (R-SD-11) The SRO determined that the June 2023 CSE had a broader range of evaluative information to consider—not just the May 2023 neuropsychological evaluation report. *Id.* The SRO found that the June 2023 IEP also considered the student's Spring 2023 iReady assessment results, May 2023 reading comprehension assessment results, and 'updated' information on the student's performance across multiple settings, including speech-language therapy, the classroom, counseling sessions, and OT and PT sessions. *Id.*

This indicates that the CSE did not have a "clear consensus" that the Student required ABA services, and the IHO need not apply the doctrine. The SRO analyzed the record and found that the Student received educational benefit in the DOE's 12:1+1 special class program during the 2022-23 school year without ABA services. (R-SD-10-14). ABA services are unnecessary when the Student is already making progress in the DOE's program. *D.S. v. Rockville Ctr. Union Free Sch. Dist.*, 2022 WL 683973, at *12 (E.D.N.Y. Mar. 8, 2022). As such, the SRO correctly found "the CSE reasonably concluded that ABA was not necessary to the [S]tudent's education." *Id.*

Finally, although the Second Circuit has stated that retrospective testimony regarding actions a school district would have taken to address a student's needs cannot be relied upon to

remedy a deficient IEP, the SRO correctly determined that Plaintiffs' argument concerning this is irrelevant, because he independently analyzed the June 2023 IEP and found that it was reasonably designed to provide the Student with educational benefits without the recommendation of ABA services. (R-SD-14).

Accordingly, the Court should uphold the SRO's decision that the "clear consensus" doctrine was not present and the lack of ABA services did not deny the Student a FAPE.

### POINT II

**BECAUSE THE DOE OFFERED THE STUDENT A FAPE, THIS COURT NEED NOT CONSIDER PRONGS TWO OR THREE OF THE *BURLINGTON/CARTER* ANALYSIS**

Because the IEP was adequate and the Defendant provided the Student with a FAPE for the 2023-24 SY, neither the IHO nor the SRO considered whether Plaintiffs' unilateral placement was appropriate or whether the equities favored Plaintiffs. (R-SD-17, I-19). Defendant "has satisfied its obligations under the IDEA and the necessary inquiry is at an end." *M.C.*, 226 F.3d at 66.

Accordingly, the Court need not reach the remaining prongs of *Burlington/Carter* as the June 2023 IEP and placement were appropriate. *Id.* at 66; *see also Walczak*, 142 F.3d at 134. However, even if it were to consider them, those prongs would still support the position of the Defendant.

### POINT III

**PLAINTIFFS' SECTION 504 CLAIM SHOULD BE DISMISSED AS THE DEFENDANT HAS NOT ACTED WITH BAD FAITH OR GROSS MISJUDGMENT**

Plaintiffs' claims under Section 504 of the Rehabilitation Act ("Section 504") fail as a matter of law because the undisputed facts establish that the Student was not denied a FAPE. Even

if the Court determines otherwise, his exclusion was not due to his disability. Moreover, even if it was, the DOE did not act with bad faith or gross misjudgment.

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C § 794(a). To adequately plead a Section 504 claim, Plaintiff must show that (1) they are qualified individuals with a disability; (2) that the Defendant is subject to the statute; and (3) Plaintiffs were denied the opportunity to participate in or benefit from Defendant's services, programs, or activities, or were otherwise discriminated against by the Defendant because of their disabilities. *T.J. ex rel. B.W. v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 171583, *41 (S.D.N.Y. Sept. 30, 2019). However, "[b]because [] Section 504 'address[es] discrimination against disabled students, rather than incorrect or erroneous special education treatments, as in the case of [the] IDEA,' there must be 'something more than a mere violation of the IDEA…in order to show a violation of [the statute] in the context of educating children with disabilities.'" *Rutherford v. Fla. Union Free Sch. Dist.*, 2019 U.S. Dist. LEXIS 55971 at *34 (S.D.N.Y. Mar. 29, 2019) (quoting *Scaggs v. New York State Dep't of Educ.*, 2007 U.S. Dist. LEXIS 35860, at *15 (E.D.N.Y. May 16, 2007) (Bianco, J.)); *see also Otto v. New York City Dep't of Educ.*, 2022 U.S. Dist. LEXIS 74030, at *17 (S.D.N.Y. Apr. 22, 2022) ("[B]ecause the Rehabilitation Act addresses 'discrimination against disabled students, rather than failures to provide special education services, a claim [based on] a denial of a FAPE brought under [Section 504] requires 'something more than a mere violation of the IDEA.'" (quoting *T.J.* 2019 U.S. Dist. LEXIS 171583 at *14)*; French v. New York State Dep't of Educ.*, 476 F. App'x 468, 472-73 (2d Cir. 2011) ("Even if we were to conclude that the District had violated the IDEA, such a violation,

without more, would be insufficient to support a claim of disability-based discrimination under []

Section 504…); *C.L. v. Scarsdale Union Free School Dist.*, 744 F.3d 826, 841 (2d Cir. 2014).

Evidence that DOE acted with "bad faith or gross misjudgment" is needed. *T.J.* 2019 U.S. Dist.

LEXIS 171583 at *14. Plaintiffs merely recite their claim that DOE failed to provide N.B. with a

FAPE. *See S.B. N.Y.C. Dep't of Educ.*, 117 F. Supp. 3d 355 (S.D.N.Y. 2015); *see* Plaintiff's

Complaint, ECF No. 1 ¶¶ 172-186.

However, the Court should find that ABA services were not required for the Student and

that the recommended IEP was appropriate. Because the Student was provided with all necessary

services under the IEP, no denial of FAPE occurred. As a result, there is no cognizable injury

under Section 504. Even if the Court were to determine otherwise, Plaintiffs fail to establish that

the exclusion was due to the Student's disability or that DOE acted with bad faith or gross

misjudgment.

Accordingly, Plaintiffs' Section 504 claims must be dismissed.

## **CONCLUSION**

Based on the foregoing, the Defendant respectfully requests that the Court deny Plaintiffs'

motion for summary judgment, grant the Defendant's cross-motion for summary judgment, and

award the Defendant such other and further relief that the Court may deem just and proper.


Dated:          March 17, 2025
                New York, New York


**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street
New York, NY 10007
(212) 356-0872
sadhinsa@law.nyc.gov


By:          /s/
          _____
          Saarah S. Dhinsa
          *Assistant Corporation Counsel*

17