UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.H. and V.B., individually and on behalf of their child, N.B., a child with a disability,<br><br>       Plaintiffs,<br><br>   -against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>       Defendant. | 24-CV-4828 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

  Plaintiffs A.H. and V.B. (each a "Parent," and collectively "Parents" or "Plaintiffs") have filed this action under the Individuals with Disabilities Education Improvement Act of 2004 (the "IDEA"), 20 U.S.C. § 1400, *et seq.* Parents seek reversal of the administrative State Review Officer's decision which found that Defendant New York City Department of Education ("Defendant" or "DOE") provided their now six-year-old child, N.B., with a free and appropriate public education ("FAPE") as required by the IDEA. Parents contend that the administrative officers failed to consider material evidence which ultimately produced incorrect decisions that warrant no deference by this Court. As a result, Parents assert claims under the IDEA and Section 504 of the Rehabilitation Act and ask this Court to vacate the SRO's decision and award tuition reimbursement for the denial of a FAPE.

  Having reviewed the administrative record and the parties' submissions, the Court finds the administrative decisions to be well reasoned and supported by a preponderance of the evidence. Therefore, substantial deference is required, and the Court adopts the SRO's conclusion that DOE adequately offered N.B. a FAPE during the 2023-24 school year.

This decision will undoubtedly disappoint Plaintiffs, who have admirably pursued what they feel is best for their child. However, the law is clear that a parent's expectations and the DOE's recommended educational program need not be a perfect circle in order for the DOE to comply with its obligations. Fundamentally, the record before the Impartial Hearing Officer ("IHO"), State Review Officer ("SRO"), and now this Court, paints a picture of a reasonable disagreement on the best course of action for N.B.'s development, not an utter disregard for N.B.'s needs. Having found the IHO's and SRO's decisions to be well reasoned and adequately supported by evidence, the Court may not disturb these decisions without engaging in the kind of substantive educational policy analysis our precedent instructs the Court to avoid. Accordingly, for these reasons and as fully described in detail below, Plaintiffs' motion for summary judgment is DENIED, and Defendant's cross motion for summary judgment is GRANTED.

## BACKGROUND

### I.    IDEA Statutory Framework

Under the Individuals with Disabilities Education Act (the "IDEA"), states receiving federal special education funding are required to provide free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1400(d)(1)(A); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014). "To provide a FAPE to each student with a disability, a school district must develop an individualized education program [("IEP")] that is 'reasonably calculated to enable the child to receive educational benefits.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (quoting *T.M. ex rel. A.M.*, 752 F.3d at 151).

"The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (citing 20 U.S.C. § 1415(b)(6)). New York has implemented a two-tier system of administrative

review. N.Y. EDUC. LAW § 4404; *see also Ventura de Paulino*, 959 F.3d at 526. In the first tier, a

parent can file an administrative due process complaint ("DPC") challenging the IEP and

requesting a hearing before an IHO. *Ventura de Paulino*, 959 F.3d at 526. In the second tier,

parties aggrieved by the IHO can appeal their decision to an SRO. *Id.*; *see also R.E. v. N.Y.C.

Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). "Once the state review officer makes a final

decision, the aggrieved party may seek judicial review of that decision in a state or federal trial

court." *Ventura de Paulino*, 959 F.3d at 526 (citing 20 U.S.C. § 1415(i)(2)(A)).

Any parents who are dissatisfied with their student's IEP may also unilaterally place their

student in a private school during the pendency of review proceedings and then seek tuition

reimbursement from their school district, but they "do so at their own financial risk." *Florence

Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) (citation omitted); *see* 20

U.S.C. § 1412(a)(10)(C).

## II.    Factual Background

Upon request of the parties, the Court waived the requirement to submit Local Rule 56.1

statements, *see* ECF No. 14, which is a common practice in IDEA cases that are based on an

undisputed administrative record. *See, e.g.*, *N.K.M. on behalf of G.M. v. Rye City Sch. Dist.*, No.

23-CV-1109, 2024 WL 4803941, at *1 n.2 (S.D.N.Y. Nov. 15, 2024) (citing *T.Y. v. N.Y. City Dep't

of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)); *accord Thomas v. Aviles-Ramos*, No. 24-CV-3904

(JPO), 2025 WL 1267446, at *1 n.2 (S.D.N.Y. Apr. 30, 2025). Instead, the parties requested that

the Court permit them to file oversized briefs to provide a "robust" statement of facts. ECF No.

14 at 3. That request was granted. *Id.*

Based on the parties' submissions, it appears that many of the relevant facts are not

disputed here. The below recitation of facts therefore is largely drawn from the SRO and IHO

decisions. Citations to a party's memorandum or either of the administrative decisions shall be

deemed to incorporate by reference the documents cited therein. The Court in particular relies on and defers to the factual findings as articulated by the IHO, which are amply supported by the record, and which the SRO also largely relied on. The Court also does so because the IHO conducted the merits hearing and directly heard evidence and assessed the credibility of the witnesses, and noted, among other things, that Plaintiffs' representative: (1) often cut off witnesses; (2) made representations as to the IEP recommendations for the 22-23 school year which was not at issue or submitted into evidence; and (3) probed issues in a manner that would not be productive.

Still, the Court has conducted an independent review of the record underlying the parties' submissions and the administrative decisions as required, and will cite to the administrative record directly where applicable.

### A. The 2022-23 School Year ("SY")

N.B. is a child diagnosed with Autism Spectrum Disorder ("ASD"), with accompanying intellectual and language impairment; Attention Deficit Hyperactivity Disorder ("ADHD") combined presentation; and Developmental Coordination Disorder. ECF No. 17 ("Admin. R." or "AR") at PE46. As a result, N.B. has significant difficulties with language, joint attention, rigidity, avoidance behavior, and repetitive behaviors which interfere with his learning and everyday functioning. *Id.* Parent testified that N.B. had a strong vocabulary bank even prior to starting kindergarten. AR at T150:17–21. N.B. also has strengths in reading and math. *Id.* at T149:18–22. N.B. often needs prompts and cues to use sentences to express his wants and needs. *Id.* at I5. Communication skills are therefore extremely important for N.B.'s progress. *Id.*

For the 2022-23 SY, N.B. attended kindergarten in a special education class located at DOE Community Public School No. 8 Shirlee Solomon School. AR at PE103, ¶ 2. N.B. worked with a full-time health paraprofessional that provided weekly speech, language, occupation, and

physical therapy in addition to counseling. ECF No. 20 ("P Mem.") at 2. N.B. also received

private, home-based Applied Behavior Analysis ("ABA") therapy funded by Parent's insurance.

AR at PE103, ¶ 3. However, according to Parent, N.B.'s growth stagnated in some areas, he lost

certain skills, and he generally showed the same aptitude at the end of the year as at the

beginning. *Id.* at T151:3–T153:16. Parents subsequently arranged for Dr. Preetika Mukherjee, a

pediatric neuropsychologist, to perform a comprehensive neuropsychological evaluation. *Id.* at

PE50, ¶ 7.

Dr. Mukherjee observed N.B. in April and May 2023 when he was 5 years old, and

documented her findings in an evaluation. *Id.* at PE50, ¶ 8. The evaluation diagnosed N.B. with

Autism Spectrum Disorder with intellectual impairment and with language impairment,

Attention Deficit Hyperactivity Disorder, Combined Presentation, and Developmental

Coordination Disorder, *id.* at PE46, and found and that he made "limited progress" in his

behavior and language skills in the special program kindergarten class. *Id.* at PE51, ¶ 12. While

Dr. Mukherjee noted N.B.'s performance was in the "superior" range in certain respects, *id.* at

PE50–51, ¶ 10, Dr. Mukherjee ultimately recommended a 12-month self-contained therapeutic,

special education class with a small student teacher ratio, in which ABA oversight is employed

throughout the school day. *Id.* at PE52, ¶ 14. Dr. Mukherjee further recommended 40 hours per

week of ABA therapy to help with "generalizing" skills. *Id.* at PE52, ¶ 15. Dr. Mukherjee's May

17, 2023 letter provided, among other things:

> A more supportive program is also required to keep [N.B.] safe, as he has poor
> safety and situational awareness. His curriculum must address his language,
> social, learning, and attentional needs as well as provide intensive applied
> behavior analysis. A BCBA should oversee [N.B.]'s program. Specifically, [N.B.]
> requires a full-time, intensive 1:1 ABA program (minimum 25 hours per week in
> the classroom and 10 hours at home) under the supervision of a BCBA to
> progress. [N.B.]'s expressive and receptive language weaknesses also support his
> need for continued intensive speech and language either through push-in or pull-
> out services as well as OT and PT services. [N.B.] requires this high level of

support to reduce interfering behaviors that prevent him from being available for learning and accessing the curriculum and acquiring and retaining skills and preventing regression.

*Id.* at PE46.

In short, Dr. Mukherjee recommended a 12-month program involving a "small" student teacher ratio and 1:1 ABA services. New York Education law defines "ABA" as "the design, implementation, and evaluation of environmental modifications, using behavioral stimuli and consequences, to produce socially significant improvement in human behavior, including the use of direct observation, measurement, and functional analysis of the relationship between environment and behavior." N.Y. EDUC. LAW § 8801. According to Kimberly Mosca (Ph.D in ABA, and Head of School at Tribeca Preparatory School), "ABA is a scientific approach to understanding and changing socially significant behaviors. Socially significant behaviors include behaviors that affect communication, academics, self-management skills, leisure skills, and daily living skills." AR at PE65, ¶¶ 1–2, 10.

**B.  June 2023 CSE Meeting and IEP Recommendations**

On June 27, 2023, the DOE's Committee on Special Education ("CSE") convened a meeting to consider Dr. Mukherjee's evaluation and develop N.B.'s IEP for the 2023-2024 school year. *Id.* at DE49, ¶ 8. An IEP had previously been developed in May 2023 before Dr. Mukherjee's evaluation (which was not submitted into the record). *Id.* Dr. Mukherjee's evaluation was the only one considered at the June 2023 CSE meeting. *Id.* at T90:2–8. Parents, Dr. Mukherjee, and Steven Popel—a school psychologist employed by DOE—attended the meeting. *Id.* at DE35.[1] In his role, Popel evaluates children based on academic, behavioral, and emotional needs. *Id.* at I5–I6. Popel attended as the school district representative. *Id.* at DE34.

---

[1] Anna DelSorbo, a special education teacher, also attended. *Id.*

Popel also had prior interaction with N.B. and his parents—N.B. was in a class at the school that Popel worked at, and Popel conferred with N.B.'s teacher and service providers to discuss N.B.'s performance. *Id.* at I6.

During the meeting, Dr. Mukherjee discussed her evaluation and identified ABA therapy as a key requirement for N.B.'s growth. *Id.* at T341:24–T342:11. Dr. Mukherjee testified that she felt it was most important that N.B. learn the needed content, and that he could be in a different student to teacher ratio program (for instance, 6:1+1 or 8:1+1) so long as he also had ABA therapy. *Id.* at T342:1–11. IHO Babbit observed, however, that this testimony was not reflected in her submitted evaluation, and that Dr. Mukherjee admitted her evaluation could be confusing and that she did not clarify her recommendation at the meeting. *Id.* at I10. Popel also testified that Dr. Mukherjee did not describe N.B.'s need for ABA therapy as specifically requiring a one-to-one ratio program, and stated that the conversation at the CSE meeting was a "completely different type of conversation" than the one he had been having with Parents and N.B.'s teacher over the course of the preceding year. *Id.* at T93:21–T94:12. Popel testified that the prior conversations involved discussions about placing N.B. in the "least restrictive environment" and so the CSE meeting was a "complete about-face." *Id.* at T94:11–23. Popel also testified regarding his concern about distance and "commuting," and how he generally had in mind a school that was closer to N.B.'s home. *Id.* at T93:5–T95:23. The IHO found Popel's testimony at the hearing to be credible. *Id.* at I13.

### C. N.B.'s 2023-24 IEP Recommendation

The June 2023 CSE recommended an IEP of a 12-month, 12:1+1 special class placement in a district specialized school (as opposed to a public-school which N.B. had been in

previously)[2] with speech-language therapy, OT, physical therapy (PT), and counseling, as well as individual 1:1 paraprofessional services. *Id.* at DE36–37. The IEP specified that Parents expressed concern about his placement, but were open to "viewing all appropriate options for [N.B.]" and requested deferral to "CBST"[3] to be considered for an ABA-based program." *Id.* at DE5. Popel noted that Parents were reportedly open "to viewing all appropriate placement options, including District 75 Specialized Schools . . . ." *Id.* at DE55, ¶ 23. The IEP team had considered even smaller staffing ratios for N.B. (like 6:1+1 and 8:1+1), but rejected them as "too restrictive" at the time because the IEP team felt N.B. needed to improve his social skills. *Id.* at DE36–37. The recommendation also noted concern about commuting time, stating that N.B. would need to "endure a 3+ hour commute in rush hour traffic DAILY if his school location [were to] be outside of his home borough." *Id.* at DE37.

The IEP reflected substantial information about N.B.'s interfering behaviors, strengths, problem areas, and key areas for development, which included an appraisal of Dr. Mukherjee's evaluation. *Id.* at DE5–DE6. For instance, the IEP specifically noted the findings from Dr. Mukherjee's May 2023 evaluation, noting, among other things, that N.B. "exhibits persistent deficits in social communication and social interaction" and "restricted interests . . . and repetitive patterns of behavior and motor mannerisms." *Id.* at DE3. The IEP also noted that N.B. was "an extremely self-directed child" who had "significant difficulty with following novel one-step directions" and exhibited significant "interfering behaviors" when he did not get his way. *Id.*

---

[2] Popel testified that at the CSE meeting, he explained to Parents the difference between a community school and the specialized school. AR at I6.

[3] While not expressly defined in the administrative record, the Court understands "CBST" to stand for "Central Based Support Team," which is "the DOE office that matches students with state-approved non-public schools." New York City Public Schools, https://www.schools.nyc.gov/learning/special-education/school-settings/other-educational-settings [https://perma.cc/RBA7-MT4B] (last visited September 19, 2025).

at DE6. The IEP did not limit its evaluation of N.B.'s aptitude and behaviors to Dr. Mukherjee's evaluation: it also referenced classroom assessments and "updated" information about N.B.'s performance during speech-language therapy, in the classroom, during counseling sessions, and in OT (occupational therapy) sessions. *Id.* at SD11. The IEP was based at least in part on the recognition that N.B. had made insufficient progress in certain elements of his schooling but made great progress in other aspects. *Id.* at I7.

The IEP did not expressly mention ABA. Popel testified that he had never written an ABA-recommended service primarily pushing ABA, and that the IEP does not need to expressly state ABA as a recommendation. *Id.* at T90:9–24. Popel testified that the IEP recommended ABA methodology programmatically, and that "databased behavioral interventions and methodologies are used by" the teachers and providers at the recommended specialized school, and that they would have board certified behavior analysts ("BCBAs"). *Id.* at I7.

In summary, Popel testified that while the IEP did not expressly mention ABA services, the intention behind the IEP and N.B.'s assignment was to provide those services. The IEP also considered earlier conversations with Parents looking to place N.B. in the least restrictive environment so that he would have every opportunity to improve his social skills (one of his recognized significant weaknesses). *Id.* at I8.

### D. Assigned District 75 Specialized School & N.B.'s Subsequent Unilateral Placement at Tribeca Prep

Parents subsequently received notice of N.B.'s assignment to District 75, P.S. R373 in Staten Island at 91 Henderson Avenue. AR at DE40. Parents went to visit on July 21, 2023, at which point they were told that the specific recommended school did not offer ABA therapy. *Id.* at I9; *see also id.* at T119:9–17. However, Antonio Vastano—the assistant principal at the recommended school—testified that if ABA therapy was appropriate for a student, they would be

9

able to locate a therapist from one of their 9 locations and could then offer the student placement at that location. *Id.* at I8. Vastano testified it was typical to host a tour with the parent and discuss the student's needs, and subsequently defer to another location if needed. *Id.* Vastano otherwise testified that the recommended school was appropriate for N.B. *Id.* Parent was apprised of the above during his tour, and had also been informed that ABA instructors were available. *Id.* at I9. In short, Vastano testified that for an initial assignment, they "just go from the IEP," but once they get more information from meeting the student and parents, they can provide the needed services. *Id.* at T118:14–22.

Still, Parents remained concerned about N.B.'s need for ABA services in light of Dr. Mukherjee's evaluation. On August 23, 2023, Plaintiffs sent a notice letter to the district stating that they rejected the recommended program and indicating their intent to unilaterally place N.B. elsewhere. *Id.* at SD3. Parents placed N.B. at Tribeca Prep for the 2023-24 school year, which employs ABA in a 1:1 or 2:1 student-to-teacher ratio. ECF No. 20 at 7. N.B. was placed in a special education class of five other students, and received full time 1:1 ABA services by behavior technicians and a dedicated BCBA.[4] *Id.* Parent drives N.B. 60-80 minutes each way from Staten Island to Tribeca Prep. AR at I9.

N.B. has a behavioral technician (teacher) with him throughout the day while at school who is not a BCBA—N.B. does not receive ABA therapy outside of school hours. *Id.* at T195:14–T196:2; T207:1–208:11. IHO Babbitt found that Parent "was extremely unclear" when testifying as to the ABA *methodology* embedded in the Tribeca *curriculum* as opposed to ABA *therapy*, despite repeated questions. *Id.* at I10. Parent ultimately appeared to testify that N.B.

---

[4] The head of school of Tribeca Prep at this time noted that a "board certified behavior analyst and a licensed behavior analyst is not the only one that can provide direct or indirect ABA services." AR at T248:19–23.

receives any and all ABA programming or therapy during the 40 hours of school time. Dr. Mosca testified that all students receive ABA throughout the day, and noted that ABA is provided in "multiple different ways." *Id.* at T250:12–251:7.

### III.    Procedural History

On September 7, 2023, Plaintiffs filed a due process complaint alleging that DOE denied N.B. a FAPE by (1) failing to recommend ABA in his IEP; (2) predetermining its decision not to recommend ABA in the IEP; and (3) failing to conduct a functional behavior assessment ("FBA") or develop a behavior intervention plan ("BIP"). *Id.*at PE2–PE7. "The matter was assigned to an IHO with the Office of Administrative Trials and Hearings, and a pre-hearing conferenced occurred on September 28, 2023." *Id.* at SD3. "An impartial hearing convened on October 31, 2023 and concluded on November 8, 2023 after two days of proceedings." *Id.* at SD3.

In a "Findings of Fact and Decision" (the "FOFD") issued on January 10, 2024, IHO Babbit found that DOE provided a FAPE to N.B. for the 2023-24 school year, and therefore denied Plaintiffs' request for tuition reimbursement at Tribeca Prep. *Id.* at SD4. Plaintiffs then appealed that decision to an SRO, who affirmed the FOFD's finding that DOE offered the student a FAPE for the 2023-24 school year. *Id.* at SD17.

Plaintiffs then filed this action on June 25, 2024 seeking reversal of the SRO's decision. ECF No. 1. On September 16, 2024, Defendant filed an answer largely denying the allegations. ECF No. 11. Plaintiffs filed the instant motion for summary judgment on December 12, 2024, and Defendant filed a cross motion for summary judgment on March 17, 2025.

## LEGAL STANDARD

### I.    IDEA

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore 'engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence.'" *Id*. (alterations adopted) (quoting *M.H.*, 685 F.3d at 240).

In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id*. (alterations adopted) (quoting *M.H.*, 685 F.3d at 240). "On issues of law, however, such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *Id.* (internal citation and quotation marks omitted). "When parents seek to overturn an SRO's decision, they bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *Phillips v. Banks*, No. 23-362-CV, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024) (internal citation omitted).

Deference to an SRO or IHO decision is particularly appropriate when the administrative officer's review has been thorough and careful, and where the district court's decision is to be based solely on the administrative record. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012). While the Court "do[es] not simply rubber stamp administrative decisions," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998), review of the administrative decision "is by no means an invitation to the courts to substitute their own

notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982).

## II.    Section 504 of the Rehabilitation Act

A motion for summary judgment on a Section 504 claim, unlike the IDEA, is reviewed under the traditional Federal Rule of Civil Procedure 56 standard. *See Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) ("Unlike in the case of [p]laintiff's IDEA claim, summary judgment is appropriate in the case of their Rehabilitation Act claim only if there is 'no genuine issue as to any material fact.'") (quoting FED. R. CIV. P. 56(c)).

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

"The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

## DISCUSSION

In accordance with 20 U.S.C. § 1414(d), the DOE, through a CSE, "must produce, in writing, an [IEP] that 'describes the specially designed instruction and services that will enable the child to meet' stated educational objectives and is reasonably calculated to give educational benefits to the child." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013) (citation omitted). For an IEP to satisfy the IDEA and provide a FAPE, it must be both procedurally and substantively adequate. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (stating that courts review state administrative decisions under the IDEA for (1) whether "the State complied with the procedures set forth in the Act" and (2) whether the IEP developed by the school district is "reasonably calculated to enable the child to receive educational benefits"). The IEP "must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement . . . [but] [a]t the

same time, it need not furnish every special service necessary to maximize each child's potential." *Cruz v. Banks*, 134 F.4th 687, 691 (2d Cir. 2025) (cleaned up), *certified question accepted as to unrelated legal question*, 43 N.Y.3d 983 (2025).

DOE asks this Court to affirm the SRO decision finding that it offered N.B. a FAPE, that the SRO properly declined to consider the remaining prongs of the *Burlington/Carter* analysis as a result, and that the Section 504 claim should be dismissed. As set forth below, the Court finds that the SRO's decision is well reasoned and grounded in fact and law, and that both the SRO and IHO each considered the arguments Plaintiffs now raise. The Court therefore accords these decisions substantial deference and similarly finds that DOE did not fail to provide N.B. a FAPE for the 2023-24 school year. The Court then finds that Plaintiffs are not entitled to summary judgment on their Section 504 claim.

### I.    Plaintiffs Fail at the First Prong of *Burlington/Carter* to Establish Entitlement to Reimbursement for Unilateral Placement

Plaintiffs seek reimbursement for tuition they paid for N.B.'s unilateral placement at Tribeca Prep. "Concerned parents are not required to leave their child in the public school system while this process is pending. Instead, parents who think that the state has failed to offer their child a FAPE in the appropriate [least restrictive environment] may pay for private services, including private schooling, and then seek reimbursement from the school district." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (citation omitted). Under the *Burlington/Carter* test, parents are entitled to reimbursement of private-school tuition only if "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement." *Id.* (citation omitted).

Plaintiffs articulate three reasons—one substantive, and two procedural—why N.B. was allegedly denied a FAPE for the 2023-24 school year: (1) the IEP did not expressly include ABA; (2) the June 2023 CSE engaged in impermissible predetermination; and (3) DOE committed a procedural violation by failing to conduct a functional behavior assessment (an "FBA") and form a behavior intervention plan. ECF No. 20 at 16–30. The SRO considered each of these arguments and rejected them, ultimately holding that DOE did in fact provide a FAPE for the applicable SY. AR at SD6–16.

The Court considers each of these arguments below to determine whether the SRO's decision is supported by a preponderance of the evidence, and finds the decision to be well reasoned and entitled to deference.

### A. Failure to Expressly Include the Term "ABA" in IEP Did Not Deprive N.B. of FAPE for the 2023-24 School Year

Plaintiffs first argue that the IEP's failure to expressly include "ABA" in its recommendation amounted to a denial of a FAPE, particularly given, they argue, there was a "clear consensus" that N.B. needed ABA.

This is a question of substantive adequacy. "A school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 173 (2d Cir. 2009) (cleaned up). Importantly, the substantive adequacy of an IEP is "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003). That is because the Court must be mindful that "the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational

policy." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021); *see also A.C.*, 553 F.3d at 173 ("Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy.").

Plaintiffs' argument boils down to two claims: (1) there was a "clear consensus" amongst the CSE participants that N.B. required ABA, and so a failure to include ABA in the IEP rendered it inadequate; and (2) N.B. required ABA to make any progress at all. But the SRO considered and reasoned through these exact arguments and rejected them. AR at SD6–14. The SRO's thorough and careful review means that deference is especially warranted. *Walczak*, 142 F.3d at 129; *see also R.E. v. New York City Dep't of Educ.,* 694 F.3d 167, 189 (2d Cir. 2012) (concluding that "the deference owed to an SRO's decision depends on the quality of that opinion").

First, the SRO scrutinized the IEP, IHO decision, and administrative record, and noted the absence of a "clear consensus" regarding the necessity of ABA because the IEP drew from several evaluative sources, not just Dr. Mukherjee's evaluation. AR at SD11–SD13. While Dr. Mukherjee felt a 1:1 ABA program would benefit N.B., the IEP reached a different conclusion based on concerns about N.B.'s need to develop social skills. *Id.* at DE37. Moreover, the record did not indicate a "clear consensus" with respect to the conversations at the CSE meeting itself: Parents were reportedly open to other options, Dr. Mukherjee admitted she did not clarify her evaluation at the CSE meeting, and Popel testified that Parents' focus on 1:1 ABA programming was a complete about face from the conversations they had been having previously about avoiding a restrictive environment. *See supra*, Background § I(B). Because there was no clear consensus, Plaintiffs' heavy reliance on *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523 (2d Cir. 2017) is misplaced. There, the Second Circuit observed the existence of a "clear consensus

of the substance of the evaluative materials present at the CSE meeting and the views of [the student's] evaluators and educational instructors." *A.M.*, 845 F.3d at 545. The Second Circuit therefore found that that the district court and administrative officers' reliance on views that went against that consensus was error. *Id.* at 545. That is not the record that was before the SRO.

Second, the SRO found that the IEP identified N.B.'s areas for development and proposed a plan for improvement. The omission of a specific methodology—e.g., ABA therapy—does not automatically amount to a denial of a FAPE. *R.B. v. New York City Dep't of Educ.*, 589 F. App'x 572, 575–76 (2d Cir. 2014). As previously noted, New York Education law defines "ABA" as "the design, implementation, and evaluation of environmental modifications, using behavioral stimuli and consequences, to produce socially significant improvement in human behavior, including the use of direct observation, measurement, and functional analysis of the relationship between environment and behavior." N.Y. EDUC. LAW § 8801. And as Dr. Mosca (Head of School at Tribeca Prep) testified, ABA is provided in "multiple different ways." *Id.* at T250:12–251:7.

While the IEP did not explicitly use the term "ABA," as Popel explained through testimony, it included a recommendation for schooling and programming that addressed substantively similar issues as ABA would target, and highlighted the same concerns that Dr. Mukherjee noted in her evaluation. The record also reflects that Parents were specifically informed of the availability of ABA tutoring during their visit to the recommended school. AR at I7–I8; *id.* at T90. The SRO considered and evaluated this evidence at length and the decision is thus entitled to deference. The SRO also addressed Plaintiffs' arguments that N.B. was being placed in a 12:1+1 ratio program, which was the same as the 2022-23 school year placement. The SRO analyzed the record and noted that N.B. showed improvement in distinct areas in that setting. AR at SD14–16. *Cf. R.B.*, 589 F. App'x at 575–76 (finding that IEP's failure to include

particular methodology did not constitute a procedural violation because evidence did not suggest the student could *only* receive education benefits through that methodology).

The Court has considered Plaintiffs' remaining arguments and finds them to be unpersuasive, largely for the reasons set forth above. The Court, however, separately notes that it rejects Plaintiffs' assertions regarding "retrospective evidence." To be sure, retrospective testimony (after an IEP is created) may not be considered "to materially alter a deficient written IEP by establishing that the student would have received services beyond those listed in the IEP." *Reyes ex rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 220 (2d Cir. 2014) (cleaned up and citing *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 174 (2d Cir. 2012)). But the Second Circuit has clarified that such "testimony may be received that explains or justifies the services listed in the IEP." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 186 (2d Cir. 2012). Vastano and Popel's testimony did exactly that: it clarified the information that was made available to Plaintiffs when they conducted a tour of the recommended school, and informed the IHO that Parents had been expressly advised of the availability of ABA instruction. And even if the Court found the testimony did not achieve that purpose, because the SRO plausibly found that the "IEP adequately provides a FAPE, it [would be] within the discretion of the IHO and SRO to amend it to include omitted services." *Id.* at 188.

The SRO's decision to consider this evidence therefore does not run afoul of the purpose in barring retrospective evidence, which is "to ensure that parents can make placement decisions for their children based solely on the information made available to them by [DOE] at the time of the placement decision." *Reyes ex rel. R.P.*, 760 F.3d at 220 (internal citation omitted). The testimony at issue here served to clarify all that had been made available to Parents before their unilateral placement decision. *R.E.* is therefore distinguishable.

In summary, the Court does not find good cause to reverse the SRO's decision as to substantive adequacy. The IEP was expressly based at least in part on the recognition that N.B. had made insufficient progress in certain elements of his schooling but made great progress in other aspects. AR at I7. And even if "the district's proposed program would not have replicated the class size, structure and supports available at [Tribeca Prep], . . . that is not the standard the [IDEA] impose[s] on the CSE." *M.C. on behalf of J.C. v. Mamaroneck Union Free Sch. Dist.*, No. 17-CV-1554 (CM), 2018 WL 4997516, at *28 (S.D.N.Y. Sept. 28, 2018). This conclusion is particularly warranted given the Second Circuit's clear instruction that "deference to an SRO's decision is more appropriate when . . . the substantive adequacy of an IEP . . . is at issue; when, as here, the decision involves a dispute over an appropriate educational methodology versus determinations regarding objective indications of progress; and when, as here, [the Court's] decision is based solely on the [same] administrative record that was before the SRO." *B.D. v. Eldred Cent. Sch. Dist.*, 661 F. Supp. 3d 299, 312–13 (S.D.N.Y. 2023) (cleaned up).

### B. Failure to Expressly Include the Term "ABA" in IEP Did Not Amount to Impermissible Predetermination

Having determined that the SRO reasonably found the IEP to be substantively sufficient, the Court next considers Plaintiffs' procedural arguments. Plaintiffs' first procedural argument is that DOE engaged in impermissible predetermination by "refusing to include ABA in N.B.'s IEP." ECF No. 20 at 25. To be sure, "[p]redetermination is inconsistent with the goals of the IDEA, which envision[s] a collaborative process in developing a uniquely suitable educational placement for each child." *Navarro Carrillo v. New York City Dep't of Educ.*, No. 21-2639, 2023 WL 3162127, at *4 n.4 (2d Cir. May 1, 2023), *cert. denied sub nom. Carrillo v. New York City Dep't of Educ.*, 144 S. Ct. 563 (2024) (quoting *E.H. ex rel. M.K. v. N.Y.C. Dep't of Educ.*, 164 F.

Supp. 3d 539, 551 (S.D.N.Y. 2016)). However, where a parent has "actively and meaningfully participated in the development of an IEP, courts have rejected predetermination claims." *Id.*

The Court similarly finds the SRO's decision to be entitled to deference based on a preponderance of the evidence. The SRO reasonably found that DOE maintained the requisite "open-mind." AR at SD6–8. Despite having already created an IEP for N.B., DOE held the June 2023 CSE meeting specifically to consider Dr. Mukherjee's evaluation. At the June 2023 CSE Meeting, Parents had the opportunity to express their concerns for N.B., which included concerns about N.B.'s "expressive language progress," and Dr. Mukherjee reviewed her evaluation. The record also indicates that Parents were open to "viewing all appropriate options for N.B." AR at DE5. While the IEP did not expressly mention ABA, Popel credibly testified it was not ordinary practice to write ABA as recommendations. AR at SD7.

Moreover, during the June 2023 CSE meeting, Dr. Mukherjee did not explain her evaluation as requiring a 1:1 ratio, and admitted her evaluation with respect to that point could be confusing. AR at I10. Indeed, Dr. Mukherjee testified a 6:1+1 or 8:1+1 ratio could suffice so long as N.B. also had a therapist (AR at T341:24–T342:11)—importantly, N.B. was already working with an ABA therapist in a 1:1 capacity at that time funded by Parents' insurance. AR at PE103, ¶ 3. The record also reflects that the CSE team maintained an "open mind" by specifically considering the potential for ABA services: the IHO found that Popel credibly testified that the IEP offered ABA methodology programmatically, and that "databased behavioral interventions and methodologies are used by" the teachers and providers at the recommended specialized school, and that they would have board certified behavior analysts ("BCBAs"). AR at I7. The IEP also expressly provided for 1:1 full time paraprofessional services. AR at SD10. And Antonio Vastano—the assistant principal at the recommended school—testified that if ABA therapy was appropriate for a student, they would be able to locate one from their 9 locations and

could then offer a student placement at that location. AR at I8. Plaintiffs were apprised of this during his tour, and had also been informed that ABA instructors were available for N.B. AR at I9.

Thus, taken together, the record indicates by a preponderance of the evidence that the CSE team did in fact consider "ABA" for N.B. in the precise manner recommended by Dr. Mukherjee's evaluation, but ultimately decided against a 1:1 recommendation because it felt N.B. required a less restrictive environment to facilitate his socialization skills. AR at DE36–37; AR at DE55, ¶ 24. Indeed, if anything, despite reportedly being "open" to other options at the CSE meeting, the record would most plausibly suggest "that it *was the parents, not the district*, who lacked an open mind about the process." *Carrillo v. Carranza*, No. 20-CV-4639 (CM), 2021 WL 4137663, at *12 (S.D.N.Y. Sept. 10, 2021), *aff'd sub nom.*, *Navarro Carrillo v. New York City Dep't of Educ.*, No. 21-2639, 2023 WL 3162127 (2d Cir. May 1, 2023) (emphasis added); *see also* AR at I19 (IHO making a similar observation).

*E.H. v. New York City Dep't of Educ.*, cited by Plaintiffs, does not compel a contrary result. ECF No. 20 at 26. In *E.H.,* the Court found predetermination even though the parents participated in the process because the CSE did not specifically consider the 2:1 ratio the parents requested. 164 F. Supp. 3d 539, 553 (S.D.N.Y. 2016). Here, however, the SRO found, and the record supports by a preponderance of the evidence, that the IEP considered ABA and an even more restrictive ratio, but concluded it would be antithetical to N.B.'s learning goals particularly with respect to expressive language, communication, and socialization. Indeed, as *E.H.* makes clear, DOE has an obligation to approach the parents' concern with an open mind and consider their preferences, but is under "no obligation to replicate the services the Parent[s] preferred." *Id.*

The Court therefore finds no basis to reverse the SRO's decision on the issue of predetermination.

### C.  Procedural Issues Regarding an FBA and BIP Did Not Deprive N.B. of FAPE

Plaintiffs' second procedural argument is that DOE's failure to conduct a functional behavior assessment (FBA) and create a behavior intervention plan (BIP) amounted to a denial of a FAPE, and that the SRO erred in concluding otherwise. ECF No. 20 at 27–30. Defendant does not appear to dispute that the June 2023 CSE did not conduct an FBA, and that this can constitute a procedural violation. However, not every procedural error will render an IEP inadequate. *See Ambrister v. Banks*, No. 23-CV-2746 (JGLC) (BCM), 2024 WL 4326933, at *2 (S.D.N.Y. Sept. 27, 2024) (citing *M.H.*, 685 F.3d at 245)). With respect to an FBA, the Second Circuit has held that the "failure to conduct an FBA . . . does not rise to the level of a denial of a FAPE if the IEP adequately identifies the problem behavior and prescribes ways to manage it." *K.L. ex rel. M.L. v. New York City Dep't of Educ.*, 530 F. App'x 81, 86 (2d Cir. 2013) (internal citation omitted); *see also M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 140 (2d Cir. 2013) (noting that a "[f]ailure to conduct an FBA . . . does not render an IEP legally inadequate under the IDEA so long as the IEP adequately identifies a student's behavioral impediments and implements strategies to address that behavior.") (citation omitted).

For substantially similar reasons as discussed in Section I, *supra*, the Court declines to reverse the SRO's findings. The SRO examined the record at length to determine that the IEP reflected information about N.B.'s "interfering behaviors from the private psychological evaluation" and gave specific examples. AR at SD9. The SRO noted that the IEP also provided for full-time 1:1 paraprofessional services and therefore "sufficiently addressed the student's identified interfering behaviors, such that the lack of an FBA or BIP . . . did not rise to the level of a denial of a FAPE." AR at SD10. The SRO also detailed how the June 2023 CSE considered a range of assessments and evaluations, including Dr. Mukherjee's evaluation. AR at SD8–10. And as testimony revealed, Parents were informed of the availability of ABA instruction when

they toured the assigned school. The Court therefore declines to disturb the SRO's finding as to the lack of an FBA/BIP.

### D. The Remaining Prongs of *Burlington/Carter* Need Not Be Analyzed

The Court has determined that the SRO plausibly found that DOE appropriately provided N.B. with a FAPE for the 2023-24 school year. The SRO therefore did not address the question of whether Tribeca Prep was appropriate for N.B.'s needs or whether the balance of equities support reimbursement. AR at SD17. The Court similarly declines to do so here because the "necessary inquiry"—whether DOE offered a FAPE—has come to a close. *See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (observing that where a school district is found to have offered the student a FAPE, then "the necessary inquiry is at an end" and the second and third prongs of the *Burlington/Carter* test need not be considered.); *Thomason v. New York City Dep't of Educ.*, No. 23-CV-8654 (LJL), 2025 WL 307223, at *10 (S.D.N.Y. Jan. 27, 2025) (declining to consider remaining prongs of *Burlington/Carter* analysis where proposed placement did not violate IDEA).

### II.    Plaintiffs' Motion for Summary Judgment Is Denied as to the Section 504 Claim

The parties have also moved for summary judgment on Plaintiffs' Section 504 claim. As set forth above, the ordinary Rule 56 standard applies to this claim. However, the claim appears to be based entirely on the same administrative record, operative facts, and legal arguments as those underlying the IDEA claim. And neither party has articulated, or attempted to articulate the existence of, a genuine issue of material fact. "As there is no genuine dispute of any material fact that would preclude judgment in favor of either party, the Court moves to its determination of which party is entitled to judgment as a matter of law." *S.B. v. Goshen Cent. Sch. Dist.*, No. 20-CV-9167 (PMH), 2022 WL 4134457, at *15 (S.D.N.Y. Sept. 12, 2022); *see also Rosenberg v. Educ. Credit Mgmt. Corp.*, No. 20-CV-688, 2020 WL 1048599, at *2 (S.D.N.Y. Mar. 4, 2020)

(finding summary judgment appropriate where "the parties agree that there are no genuine issues of material fact").

The Court finds that Plaintiffs are not entitled to summary judgment *as a matter of law* on their Section 504 claim. The statutes provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. To state a prima facie violation of Section 504, a plaintiff must show that "(1) he is a disabled person under the Rehabilitation Act; (2) he is otherwise qualified for the program; (3) he is excluded from benefits solely because of his disability; and (4) the program or special service receives federal funding." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840–41 (2d Cir. 2014) (cleaned up).

A Section 504 claim may be predicated on the denial of a FAPE, but "[s]uch a claim, however, requires proof of bad faith or gross misjudgment." *Id.* (citation omitted); *see also A.S. v. Mamaroneck Union Free Sch. Dist.*, No. 21-CV-6937 (CS), 2024 WL 308211, at *8 (S.D.N.Y. Jan. 26, 2024) (similar). "Courts have equated gross misjudgment with deliberate or reckless indifference." *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 468 (S.D.N.Y. 2018) (collecting cases). "To meet the required standard, a plaintiff must show that a defendant acted with at least deliberate indifference to the strong likelihood that implementing its policy or custom would violate federally protected rights . . . [so] [i]n other words, deliberate indifference is demonstrated by showing that the defendant appreciated that its conduct would run a serious risk of violating federal rights, but continued the conduct anyway." *A.S.*, 2024 WL 308211 at *10 (internal citation and quotation marks omitted).

Having affirmed the SRO's finding that DOE did not deny N.B. a FAPE during the 2023-24 school year, the Court finds that the record does not support a finding of deliberate

indifference or bad faith for substantially similar reasons. As discussed *supra*, the record indicates that DOE earnestly and carefully evaluated a number of assessments and evaluations in crafting the IEP, proposed a plan designed to help N.B. progress in targeted areas, and specifically considered Dr. Mukherjee's recommendation, but concluded it would be too restrictive. This is a far cry from the kind of indifference necessary to support a Section 504 claim, and would certainly be insufficient to allow this Court to decide, *as a matter of law*, that DOE acted with deliberate indifference. *See S.B.*, 2022 WL 4134457, at *16–17 (granting summary judgment to Defendant where Plaintiffs failed to establish, as a matter of law, that Defendant exhibited any bad faith, gross misjudgment, or deliberate indifference). Defendant is therefore entitled to summary judgment dismissing the Section 504 claim. *Id.* at *17 (citing *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 296 (S.D.N.Y. 2010)).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate ECF Nos. 18 and 25, and to close this case.

Dated:  September 29, 2025
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

26